UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LAWRENCE S. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 13-65-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JARED BOGGS, Individually and in his | ) | **MEMORANDUM OPINION** |
| Official Capacity as Kentucky State | ) | **AND ORDER** |
| Trooper, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This case presents the issue of whether an individual confronted by law enforcement has a clearly-established First Amendment right to record the confrontation using a video camera or other recording device. Because the Court concludes that the alleged right is not clearly established, the plaintiff's claim asserted under 42 U.S.C. § 1983 will be dismissed. Likewise, the undisputed evidence does not support the plaintiff's state law damage claims for assault and battery. As a result, those claims also will be dismissed.

**I.**

Defendant Jared Boggs is a Kentucky State Police Trooper assigned to the Harlan, Kentucky post. This action arises from a traffic stop made by Trooper Boggs on January 7, 2013, on Kentucky Highway 3451 in Harlan County, Kentucky. At the time of the

-1-

incident, Plaintiff Lawrence Williams, then a minor, was riding a Kawasaki off-road motorcycle, performing "wheelies" in a residential area marked by "Slow, Children at Play" signs. Boggs claims that, before the incident, he had warned Williams about similar conduct. On the date of the incident, Boggs did not issue a warning. Instead, the trooper stopped Williams and cited him for operating an ATV on the roadway, careless driving, no/expired registration plates, no/expired Kentucky registration receipt, and failure to maintain required insured/security. Williams subsequently pleaded guilty to all of the charges.

Williams was video-recording his activities on January 7th using a camera mounted on his helmet. During the traffic stop, Boggs attempted to remove the camera from Williams' helmet and allegedly retain it as evidence of the plaintiff's illegal activities. Williams objected to and resisted Boggs' efforts. However, the plaintiff eventually removed the camera himself and ended the recording. Williams concedes that Boggs did not harm him in any way or damage any of his property during the encounter.

Williams was a minor at the time of the incident. On March 12, 2013, Williams' mother filed suit against Boggs in Harlan County Circuit Court, asserting claims of assault and battery under state law and a violation of her son's First Amendment rights under 42 U.S.C. § 1983. *See Tracey Williams v. Jared Boggs*, No. 13-CI-00145 (Ky. Cir. 2013). Williams was later added as the named plaintiff after turning eighteen years-

old.  In relevant part, the original Complaint contained the following allegations regarding the confrontation with Boggs:

> 4. The Defendant committed the assault upon realizing Plaintiff had been videotaping a traffic stop in which Defendant was being highly abusive to Plaintiff.
>
> 5. In attempting to tear the helmet camera system from the head of Plaintiff while assuming a threatening tone and posture and stating and commanding Plaintiff to turn it (the camera) off, Defendant committed the tort of Assault by intentionally putting Plaintiff in a reasonable apprehension of an immanent harmful or offensive contact.

[Record No. 1-2]

In his opposition to the defendant's motion for summary judgment, Williams' counsel states that, in the plaintiff's interview with another officer following the incident, Williams indicated that Boggs tried to "jerk" the camera off his head. [Record No. 30, p. 7]  And in the next paragraph of his memorandum, counsel states that review of the video reflects that the defendant "can plainly be seen grabbing the camera with such force that it moves Plaintiff's entire head." [*Id.*]

As noted previously, the plaintiff's Complaint contained three counts for relief which sought a judgment for assault (Count I), battery (Count II), and violation of 42 U.S.C. § 1983.  More specifically, Mrs. Williams contended that Boggs violated her son's "first amendment right to film a police officer guaranteed [to him] by the United States Constitution.  The Complaint sought an unspecified amount of punitive damages.

However, the damage clause was later amended to request punitive damages of $15,000.00.

Neither the original nor First Amended Complaint allege that the plaintiff suffered injury or property loss as the result of the defendant's actions. Further, the First Amended Complaint filed following removal of the action to this Court outlines the same conduct in support of the plaintiff's three claims. However, Williams adds to his narrative that, before attempting to "tear" the helmet camera system off his (Williams') head, Boggs "assumed a threatening tone and posture (gritting teeth and clinched fist) and then stating and commanding Plaintiff to take it (the camera) off . . ." [Record No. 21, p. 2, ¶ 7]

After the close of discovery, Defendant Boggs moved the Court for entry of summary judgment in his favor. [Record No. 28] Boggs asserts that, based on the testimony of the parties and the video of traffic stop, there are no genuine issues of material fact. Boggs contends that summary judgment is appropriate regarding the claim asserted under 42 U.S.C. § 1983 because Williams cannot show that a constitutional violation occurred during the traffic stop on January 7, 2013. However, he contends that, even if the Court concludes that the plaintiff had a constitutionally-protected right to record the parties' interactions, that "right" was not clearly established. Thus, he asserts that qualified immunity bars Williams' § 1983 claim. Finally, Boggs argues that the remaining state law claims should be dismissed because

Williams did not suffer any actual damage or property loss and punitive damages cannot be awarded under the facts presented.

Williams opposes the defendant's motion for summary judgment. [Record No. 30] According to the plaintiff, authority from other jurisdictions indicate that the plaintiff had a recognized right to record the confrontation with the defendant on January 7, 2013. Thus, he contends that qualified immunity does not apply. Further, Williams asserts that, because the legal question of immunity is dependent upon which view of the facts is accepted by the jury, summary judgment is not appropriate.

Williams spends little time discussing the state law claims of assault and battery in his response to Boggs' motion for summary judgment. [*Id.*, pp. 17-18] Rather, he simply asserts that the issue of whether Boggs' actions were malicious, oppressive, or outrageous such that they would support a claim for punitive damages under Counts I and II are factual issues which must be resolved by the jury.

## II.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings; instead, he or she must come forward with probative evidence, such as sworn affidavits, to support the claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

**A.   Qualified Immunity**

Title 42 of the United States Code, Section 1983 states that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

> subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. The parties do not dispute that, at the time of the incident in question, the defendant was acting under color of law. However, they do dispute whether Defendant Boggs is entitled to qualified immunity as a defense to Williams' § 1983 claim.

Government officials performing discretionary actions are generally provided qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if qualified immunity is applicable, a court undertakes a two-step inquiry. First, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 121 (2001). Next, the court must also determine whether the alleged violation was of "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996) (internal quotation omitted). However, the Supreme Court has held that it is not necessary that the trial court address the two inquiries in the order presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)). "Although it need not be the case that 'the very action in question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson,* 483 U.S. at 640). The Supreme Court has stated that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). However, if there is no controlling authority in the jurisdiction at the time of the incident and no consensus of persuasive authority, it is unlikely that a reasonable officer would understand that his actions are unlawful. *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Although Williams need not provide a case that previously found the very same action unlawful, *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002), ordinarily the plaintiff must point the court to a decision from the Supreme Court, the Sixth Circuit, or another appellate court finding a constitutional violation in analogous circumstances. In other words, he must provide authority which demonstrates that Boggs' conduct falls within the realm where a reasonable official would realize that his conduct violates a right. *Andrews v. Hickman County*, 700 F.3d 845, 853 (6th Cir. 2012); *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). "[I]n the light of preexisting

law the unlawfulness must be apparent." *Andrews*, 700 F.3d at 853 (citation omitted). *Minick v. Metro. Gov't of Nashville*, 2013 FED App. 0901N (6th Cir. Oct. 21, 2013).

Williams argues that his constitutional right was well established at the time of Boggs' conduct (January 7, 2013). [Record No. 31-1, p. 10] He asserts that because the First, Seventh, and Eleventh Circuits have all found a constitutional right to film a police officer, a reasonable officer would be aware that his actions would have violated that right. [*Id*. (citing *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Glik v. Cunnife*, 655 F.3d 78, 85 (1st Cir. 2011); *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)).]

In *Alvarez*, the Seventh Circuit found that Illinois' wiretapping statute criminalizing the audio and video recording of police officers violated the clearly established constitutional right to record a police officer. 679 F.3d at 595-96. Next, in *Smith*, the Eleventh Circuit held that — *subject to reasonable time, place, and manner restrictions* — the First Amendment provides a right to record police officers. 212 F.3d at 1333. And in *Glik*, the First Circuit found that police officers violated a party's clearly established constitutional right to film police officers when he was arrested for videotaping them while they were arresting a man in a public park. 655 F.3d at 85. It is noteworthy that the First Circuit concluded that, while there was precedent from the Third Circuit stating that such a right was not clearly established concerning recording

an officer during a traffic stop, "a traffic stop is worlds apart from an arrest [in a public park.]" *Id*. (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010)).

Williams contends that the holdings in these cases demonstrate that the right to film a police officer was clearly established on January 7, 2013, such that a reasonable officer would have known that the actions taken by Boggs were in violation of that right. He also claims that the holding in *King v. City of Indianapolis* demonstrates that such a right is clearly established. No. 11-CV-01727-TWP, 2013 WL 4602202, at *5 (S.D. Ind. Aug. 29, 2013). In *King*, the District Court found that the right to film a police officer during a traffic stop was not clearly established. *Id*. at *5. Williams argues that the district court would have held differently had the court considered the holding in *Alvarez*. However, that is mere speculation.

While there is some precedent from other jurisdictions indicating a right exists under the First Amendment to video-tape police in certain contexts, it is not uniform and not clearly-established, especially in the context of traffic stops. In *Kelly*, the Third Circuit found that "there is insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on 'fair notice' that *seizing a camera* or arresting an individual for videotaping police during the stop would violate the First Amendment." 622 F.3d at 262 (emphasis added). Additionally, the Fourth Circuit has held that the right to record police activities on public property was not clearly established. *Szymecki v. Houck*, 353 Fed. App'x. 852, 853 (4th Cir. 2009)

(unpublished). There, the court stated that "if the right is recognized in another circuit and not in this circuit, the official will ordinarily retain the immunity defense." *Id*.

In short, the right to film a police officer during a traffic stop is not so clearly established that a reasonable officer would have fair notice that Boggs' actions violated that alleged right when the traffic stop occurred. Importantly, there is no authority from the Sixth Circuit clearly establishing any right to film a police officer, during a traffic stop or otherwise. *See Eugene D. By & Through Olivia D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989) ("[W]e examine initially, and most importantly, the decisions of the Supreme Court and the courts of this circuit."). As discussed above, while three circuits have held that a right to film police officers *in some circumstances* is clearly established, two others have held that it is not. And as the Sixth Circuit has held, "a disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established." *Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012) (citing *Baranksi v. Fifteen Unknown Agents of Bureau of ATF*, 452 F.3d 433, 449 (6th Cir. 2006) ("[T]his disagreement among the circuits…shows that the [government] did not violate clearly established law.")). With no controlling authority and competing holdings from other circuits, it is not reasonable to say that an officer would have fair notice that preventing the recording of a traffic stop would violate the First Amendment right to film police.

Moreover, even if the alleged right were clearly established, it would not be absolute but subject to reasonable restrictions regarding time, manner and place. Like

*Kelly*, none of the Circuit cases relied upon by Williams involve a traffic stop similar to the one in issue here.[1] Again, while there is some authority from other circuits regarding a general right to film police officers, that authority does not extend the recognized right to traffic stops. Indeed, the district court in *King* found that such a right was not clearly established in that context. 2013 WL 4602202 at *5. Additionally, the only out-of-circuit case involving the video-recording of a police officer during a traffic stop held that such a right is not clearly established. *Kelly*, 622 F.3d at 262.

As Boggs correctly asserts, First Amendment precedent can be so complex that an officer may not have notice that his conduct is violating an established right. [Record No. 28-1, p. 6 (citing *Hayes v. Dye*, No. 08-165-WOB, 2010 U.S. Dist. LEXIS 91639, at *34 (E.D. Ky. Sept. 2, 2010)). Given the underdeveloped and contradictory authority, the contours of this right were not sufficiently clear to inform a reasonable officer that the conduct in issue would be improper. And "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson*, 526 U.S. at 618.

### B. Tort Claims Under Kentucky Law

Once a district court dismisses the claims over which it has original jurisdiction, it is within its discretion to decline to exercise supplemental jurisdiction over the

---

[1] The Supreme Court has recognized that traffic stops present inherent risks to law enforcement officers. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) ("[T]raffic stops are especially fraught with danger to police officers. The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized . . . if the officers routinely exercise unquestioned command of the situation.") (alterations in original) (internal quotations and citations omitted).

remaining claims. *Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)). In deciding whether to exercise such jurisdiction, courts should balance the "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court recognizes that this balance includes the interest of not "needlessly deciding state law issues." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004). Further, there is a strong presumption that once all the federal claims have been dismissed, a court should only retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Here, the interests of comity and judicial economy do not favor remand. The only remaining claims are the state torts of assault and battery which may be easily resolved on the record currently before the Court. Thus, there are "substantial savings in judicial resources [to] be gained that outweigh the interest in avoiding the unnecessary resolution of state law issues." *DePiero v. City of Macedonia*, 180 F.3d 770, 790 (6th Cir. 1999) (citing *Hawkins v. The Gap Inc.*, 84 F.3d 797, 803 (6th Cir 1996)).

The defendant notes that, under Kentucky law, assault is the threat of an unwanted touching while battery is the unwanted touching. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). In the present case, the parties agree that Williams did not suffer any property damage or physical (or other) injury as a result of the

confrontation on January 7, 2013. Instead, Williams claims that Boggs' harsh language would be sufficient to establish an assault while his unwanted attempt to remove the video camera would fit the definition of battery. However, because Williams seeks punitive damages, the question presented is whether Boggs' actions were malicious, oppressive, or outrageous. Under the circumstances presented, the Court concludes that a jury could not find in Williams' favor on this issue.

Trooper Boggs confrontation with Williams occurred during the course of a traffic stop. While Williams was not arrested, he was detained and cited for several traffic offenses. Later, Williams admitted that he was guilty of those offenses. It is neither unreasonable nor improper to assume that, during such encounters, it will be necessary for some contact to occur. Here, the conduct was not violent and did not result in any personal injuries or property damage. Under Kentucky law, Trooper Boggs is entitled to qualified immunity for "good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2004).

There is no evidence that Boggs acted with intent to harm Williams. Likewise, there is no evidence that his conduct was malicious, outrageous, or oppressive. It is simply not enough that Boggs' statements, raised voice, or posture might have caused Williams to subjectively feel uncomfortable. It can be safely argued that most traffic stops could generate such feelings, but would not give rise to claims of assault and battery even if contact or a slight touching occurred during the encounter. Accordingly,

summary judgment is appropriate and will be granted with regard to the plaintiff's state law claims of assault and battery.

**IV.**

Boggs is protected by qualified immunity from Williams' § 1983 claim as the right to film a police officer during a traffic stop was not so clearly established that a reasonable officer would know that he was violating that alleged right. Thus, the Court will enter summary judgment on this claim. Likewise, summary judgment is appropriate and will be granted in favor of the defendant regarding the remaining state law claims. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Jared Boggs' motion for summary judgment [Record No. 28] is **GRANTED**. The claims asserted in this action by Plaintiff Lawrence Williams are **DISMISSED**, with prejudice.

2. This action is **DISMISSED** and **STRICKEN** from the docket.

3. The pretrial conference and trial previously scheduled are **VACATED** and **CANCELED**.

4. A separate Judgment shall issue this date.

This 13th day of February, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge